UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELVIN RODRIGUEZ,
Petitioner,

v.

CIVIL ACTION NO.
13-11807-RGS

GARY RODEN, Superintendent
MCI-Norfolk,
Respondent.

**REPORT AND RECOMMENDATION RE:**
**RESPONDENT'S MOTION TO DISMISS**
**(DOCKET ENTRY # 18)**

**May 28, 2014**

**BOWLER, U.S.M.J.**

Respondent Gary Roden ("respondent"), Superintendent of the Massachusetts Correctional Institute in Norfolk, Massachusetts ("MCI-Norfolk"), moves to dismiss a petition for writ of habeas corpus ("the petition") filed pro se under 28 U.S.C. § 2254 ("section 2254") by petitioner Elvin Rodriguez ("petitioner"), an inmate at MCI-Norfolk. Petitioner attacks his state court convictions based upon errors in the admission of "prior bad acts" evidence and "first complaint testimony" in the Massachusetts Superior Court Deportment (Hampden County) ("the trial court"). (Docket Entry # 1). Respondent seeks to dismiss the petition because petitioner did not exhaust his state court remedies and only raises errors of state law. (Docket Entry # 19).

There is little indication that petitioner seeks an

evidentiary hearing. Even if he did, a hearing is not required or necessary. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") bars an evidentiary hearing in federal court unless a petitioner shows that his "claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A); see also Teti v. Bender, 507 F.3d 50, 61-62 (1st Cir. 2007) (discussing section 2254(e)(2)).

Here, even if petitioner avoids the section 2254(e)(2) bar, an evidentiary hearing would not enable him to establish facts that would entitle him to federal habeas relief. See Teti v. Bender, 507 F.3d at 62; see also Companonio v. O'Brien, 672 F.3d 101, 112 (1st Cir. 2012). The facts taken from state court findings filings, trial transcripts and related documents contain all the relevant and necessary undisputed facts to establish a factual basis and address the merits of respondent's arguments. See, e.g., Neverson v. Bissonnette, 242 F.Supp.2d 78, 88 (D.Mass. 2003) (quoting section 2254(e)(2)), aff'd on other grounds, 366 F.3d 32 (1st Cir. 2004).

The record before this court is therefore complete. In any event, it is inappropriate to conduct an evidentiary hearing and consider new facts not before the state courts when conducting a

section 2254(d)(1) analysis. See Garuti v. Roden, 733 F.3d 18, 22 (1st Cir. 2013) ("'review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits'") (quoting Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011)).

PROCEDURAL BACKGROUND

On January 21, 2009, a grand jury sitting in the trial court returned an Indictment charging petitioner with three counts of statutory rape of a child in violation of Massachusetts General laws chapter 265 ("chapter 265"), section 23, and six counts of indecent assault and battery on a child under 14 in violation of chapter 265, section 13B. (Docket Entry # 15, S.A. 3, 52-60). On February 9, 2010, petitioner filed two motions in limine. The first motion sought to exclude evidence of petitioner's prior bad acts and the second motion sought to limit the "number of fresh complaint witnesses." (Docket Entry # 15, S.A. 4-5, 66, 69-70).

Turning to the latter motion, in open court on April 6, 2010, the Commonwealth explained that it would call an older sister ("the first victim") to testify as a first complaint witness for disclosures about petitioner's conduct that her younger sister ("the second victim") made to her. (Docket Entry # 15, S.A. 171-172). The Commonwealth also represented it would call a friend of the first victim to testify as a first complaint witness for disclosures that the first victim made to her friend.

(Docket Entry # 15, S.A. 172). Upon hearing that the Commonwealth planned to call only these two first complaint witnesses, petitioner agreed to withdraw the motion. (Docket Entry # 15, S.A. 174-175). The trial judge therefore endorsed the motion as moot and noted that petitioner had no objection to the Commonwealth calling the aforementioned first complaint witnesses. (Docket Entry # 15, S.A. 69).

The procedural history of the second motion in limine is more complex. The Commonwealth anticipated introducing evidence of petitioner's similar conduct that took place in Puerto Rico before the two victims, their stepsister, their mother and petitioner moved to Holyoke, Massachusetts in May 2004 and then to Springfield, Massachusetts in July 2007. (Docket Entry # 15, S.A. 163, 554, 647, 652). Petitioner, who was the victims' mother's boyfriend at the time, lived with the three sisters and their mother during the two year period when the conduct took place.[1] (Docket Entry # 15, S.A. 229, 446, 532-533, 644, 646).

On April 6, 2010, the trial judge conducted a voir dire examination of both victims to ascertain inter alia the nature of the prior bad acts. The first victim described three or four incidents at a beach when petitioner touched her chest over her

[1] At trial the second victim also referred to petitioner as her "ex-stepfather" and her grandmother referred to petitioner as "the husband, boyfriend of my daughter." (Docket Entry # 15, S.A. 445, 646).

bathing suit while they were in the water. Petitioner warned her that he would drown her if she reported the incidents. She also described two incidents that took place in a parked automobile during which petitioner touched her vagina over her underwear and incidents at night when petitioner would have her lie naked underneath him while he "rub[bed] his penis on" top of her vagina.

The second victim testified about an incident when petitioner touched her chest on top of her shirt and the outside of her vagina underneath her clothes. The incident took place while the second victim sat on petitioner's lap. Petitioner gave her money not to report the incident. At the beach, the first victim refused to kiss petitioner but she did observe him kiss her younger sister.

Before impanelment, the trial judge denied the motion. He reasoned that the incidents were probative of the development of the relationship, petitioner's "inclination to commit the acts charged," his "passion for" the victims and the fear felt by the victims as a reason for not reporting the incidents earlier. (Docket Entry # 15, S.A. 229-230). During a short opening statement, petitioner's counsel told the jury about the victims' grandmother pressuring them to "fabricate" their stories. (Docket Entry # 15, S.A. 440).

Before the first victim testified at trial about the

incidents in Puerto Rico, the trial judge instructed the jury that it could only consider the acts that took place in Puerto Rico for the limited purpose of showing "knowledge, intent, motive, or method" and not "as proof that [petitioner] committed the crimes charged or that he has a criminal personalty or bad character." (Docket Entry # 15, S.A. 534). The trial judge gave a similar limiting instruction before the jury heard the second victim's testimony about petitioner's conduct in Puerto Rico. (Docket Entry # 15, S.A. 442-443).

The victims' trial testimony regarding the uncharged conduct was similar to their testimony on voir dire. (Docket Entry # 15, S.A. 447-449, 535-541). Their testimony about the charged conduct that took place in Holyoke and Springfield described incidents similar to those in Puerto Rico. Thus, similar to the beach incident when petitioner touched the first victim's chest and the other incidents during which petitioner touched and rubbed her vagina, petitioner touched the first victim's chest over and under her shirt as well as her vagina under her pants while she washed dishes in the kitchen of the Holyoke home. (Docket Entry # 15, S.A. 182-183, 185, 187-189, 544-550). She testified that the incidents "happened many times." (Docket Entry # 15, S.A. 552).

The incidents finally stopped when the first victim told petitioner she had told her best friend "about it and that if he

touched me again that I was going to tell her, and that she was going to call the police." (Docket Entry # 15, S.A 554-555). The circumstance under which the first victim initially reported the conduct to her friend took place after the first victim's fourteenth birthday party at the Holyoke home. During the party with her friends, petitioner grew angry when he saw her dancing with her boyfriend. He then pulled her aside, started screaming at her and ended the party. (Docket Entry # 15, S.A. 555-556). Her friend had previously observed petitioner grab the first victim around her waist "like a boyfriend would grab a girlfriend, not as a stepfather should." (Docket Entry # 15, S.A. 630). After the trial judge gave a limiting instruction regarding first complaint testimony, the friend testified that about a week after the party, the first victim told her that petitioner "would make her do stuff she didn't want to do, but she had to do it." (Docket Entry # 15, S.A. 623-624, 632-633). The friend's testimony reciting what the first victim told her about petitioner's misconduct consisted of only a few sentences during the three day trial.[2] (Docket Entry # 15, S.A. 623-624).

Turning to the second victim, similar to petitioner kissing and touching her chest and vagina in Puerto Rico, the second victim testified at trial that petitioner touched the outside of her vagina in the bathroom of the Holyoke home and on a weekly

---

[2] See footnote nine.

basis forced her to masturbate him while she watched her favorite television show in the living room of the Springfield home. (Docket Entry # 15, S.A. 453-454, 457-462). He warned her that he would not allow her to use the telephone if she refused. (Docket Entry # 15, S.A. 459-460). On another occasion, petitioner put his penis in the second victim's mouth and ejaculated in the living room of the Springfield home. (Docket Entry # 15, S.A. 463-466).

The second victim first reported the conduct to her older sister one night after she refused to masturbate petitioner while watching the television show. When petitioner told her she could not watch the show and could no longer use the telephone, she went up to the bedroom she shared with her older sister and started to cry. Her older sister then asked her what happened and she reported half or "some of what [petitioner] did" but not all of it because she was scared. (Docket Entry # 15, S.A. 473-474). At trial, her older sister, the first victim, testified about this first conversation that she had with her sister about the incidents. (Docket Entry # 15, S.A. 562-563). At this point in the testimony, the trial judge gave the jury an extended limiting instruction about first complaint testimony.

On April 9, 2010, the jury found petitioner guilty of one count of statutory rape of the first victim in Holyoke and one count of statutory rape of the second victim in Springfield.

(Docket Entry # 15, S.A. 52, 54, 160, 682-684, 779-781). The jury also found petitioner guilty of one count of indecent assault and battery of the second victim in Holyoke and another count of indecent assault and battery of the second victim in Springfield. (Docket Entry # 15, S.A. 58-59, 160, 685-686, 782-783). The jury found petitioner guilty of two counts of indecent assault and battery of the first victim in Holyoke. (Docket Entry # 15, S.A. 55-56, 160, 684-685, 781-782). The jury acquitted petitioner of the other statutory rape count involving the second victim, one count of indecent assault and battery of the first victim in Holyoke as well as one count of indecent assault and battery of a third victim (the sisters' step sister). (Docket Entry # 15, S.A. 53, 57, 60, 160, 684-689, 780, 782-784). Petitioner received an 11 to 13 year sentence on one count, a concurrent sentence of the same length on another count and five years probation on the remaining four counts to run from and after the first sentence.

Petitioner filed a timely notice of appeal. The Massachusetts Appeals Court ("the appeals court") brief raised the following two issues: (1) the trial judge erred by allowing the prior bad acts testimony which prejudiced petitioner; and (2) the trial court erred by allowing and instructing the jury on the first complaint testimony of the friend as to the first victim's statement. (Docket Entry # 15, S.A. 13, 16-40, 111). On March

4, 2013, the appeals court affirmed the judgment. (Docket Entry # 15, S.A. 111-112).

Petitioner filed an application for further appellate court review ("ALOFAR") with the Massachusetts Supreme Judicial Court ("the SJC"). (Docket Entry # 15, S.A. 116, 124-144). As set forth in the statement of points to which further review is sought, see Mass.R.App.Pro. 27.1(b), petitioner raised the following two grounds:

> 1. The judge erred when he allowed testimony of excessive uncharged offenses "bad acts" into evidence which prejudice against the defendant outweighed the probative value and became in effect propensity evidence in violation of [petitioner's] federal and state constitutional rights.
>
> 2. The [trial] court erred when it allowed and instructed the jury on the testimony of the first complaint witness for [the first victim] as first complaint testimony.[3]

(Docket Entry # 15, S.A. 125) (capitalization omitted).

With respect to the first issue, the body of the ALOFAR cited exclusively to state court cases but concluded with the argument that petitioner's "right to a fair trial under the Sixth and Fourteenth Amendments of the Constitution was violated by the massive amounts of prejudicial 'bad acts' evidence." (Docket Entry # 15, S.A. 134-139). Of the eight state court cases cited

---

[3] On appeal, petitioner restricted the first complaint issue to the testimony of the friend of what the first victim told her about petitioner's conduct. The petition likewise recounts facts specific to this testimony as opposed to the first complaint testimony of the first victim about what the second victim told her.

in the ALOFAR, seven of the cases[4] do not contain federal court cases and do not cite the federal constitution or federal constitutional principles. The seventh case, Commonwealth v. Barrett, 418 Mass. 788 (1994), cites the Sixth Amendment only in the context of an ineffective assistance of counsel claim which, in turn, was founded upon a failure to object to the introduction of prior bad acts testimony. Commonwealth v. Barrett, 418 Mass. at 796. Moreover, the cited page numbers for Barrett in the ALOFAR do not include page 796.

With respect to the second issue, the ALOFAR again cites and relies upon only state court cases. Unlike the ALOFAR's presentation of the first issue, the ALOFAR fails to refer to the federal constitution in the points for review or the heading prefacing the discussion of the issue. (Docket Entry # 15, S.A. 125, 134). In the final sentence of the five page discussion, however, the brief asserts a violation of petitioner's "right to a fair trial under the Sixth and Fourteenth Amendment[s] to the United States Constitution" due to "prejudicial errors."[5]

---

[4] Commonwealth v. Dwyer, 448 Mass. 122, 129-130 (2006); Commonwealth v. King, 445 Mass. 217, 243 (2005); Commonwealth v. Baker, 440 Mass. 519, 530 (2003); Commonwealth v. Marshall, 434 Mass. 358, 366 (2001); Commonwealth v. Keniston, 423 Mass. 304, 308 (1996); Commonwealth v. Helfant, 398 Mass. 214, 224 (1986); Commonwealth v. Roche, 44 Mass.App.Ct. 372, 380 (1998).

[5] The same paragraph separately refers to the state law standard of a "substantial risk of a miscarriage of justice." (Docket Entry # 15, S.A. 143).

(Docket Entry # 15, S.A. 139-143). The cited state court cases present the first complaint doctrine as grounded in state evidentiary law and none of the cases cite to federal cases. One of the five state court cases notes a denial of a "fair trial" without a reference to the federal constitution. Commonwealth v. King, 445 Mass. at 234.

On March 22, 2013, the SJC summarily affirmed the judgment and denied the ALOFAR. (Docket Entry # 15, S.A. 10); Commonwealth v. Rodriguez, 465 Mass. 1103, 987 N.E.2d 595 (2013) (unpublished table decision). Petitioner timely filed this petition in July 2013. Like the appeals court brief and the ALOFAR, the petition does not address or challenge the admission of the first complaint testimony by the first victim (the older sister) for the disclosures made to her by the second victim (her younger sister). Rather, the petition only recounts the first complaint testimony by the friend of the older sister regarding the disclosures made to her by the older sister. (Docket Entry # 1, pp. 8-10).[6]

## DISCUSSION

Respondent submits that petitioner fails to exhaust his state court remedies and raises only errors of state law. Petitioner did not file an opposition to the motion.

---

[6] Page references refer to the pages as docketed in this court's electronic document filing system, CM/ECF, as opposed to the pages of the petition itself.

A. Exhaustion

A petitioner exhausts state court remedies regarding a ground for relief when he fairly and recognizably presents the federal claim to the state courts. Rosenthal v. O'Brien, 713 F.3d 676, 688 (1st Cir. 2013) (citing Baldwin v. Reese, 541 U.S. 27, 29 (2004)); Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011). Exhaustion, a matter of comity, requires a fair presentment of the substance of the federal claim "to the state's highest court." Barresi v. Maloney, 296 F.3d 48, 51 (1st Cir. 2002). The ALOFAR is therefore the decisive document for exhaustion analysis. See Clements v. Maloney, 485 F.3d at 162-165.

In order to "'fairly and recognizably'" present the federal claim to the SJC, the petitioner "'must show that he tendered [the] federal claim "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question."'" Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000)). The myriad ways to satisfy the fair presentment requirement include "(1) citing a specific provision of the Constitution; (2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a particular

right specifically guaranteed by the Constitution." Barresi v. Maloney, 296 F.3d at 52; see Coningford v. Rhode Island, 640 F.3d at 482 (listing these non-exclusive ways to satisfy fair presentment requirement).

For example, "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32 (2004) (dicta). The presentation of the first issue more than likely alerted a reasonable jurist to the federal issue because the statement of points to which further review was sought alleged a violation of the federal constitution. Furthermore, the concluding sentence in the discussion requested a reversal of the convictions because of a violation of petitioner's "right to a fair trial under the Sixth and Fourteenth Amendments of the Constitution." (Docket Entry # 15, S.A. 125, 139). Petitioner therefore cited a specific provision of the Constitution and a particular right guaranteed by the Constitution. See Barresi v. Maloney, 296 F.3d at 52. Petitioner thereby satisfied the exhaustion requirement.

With respect to the second issue, the points for review did not refer to a violation of the federal constitution. Moreover,

"'Alleging lack of a fair trial does not convert every complaint about evidence into a federal due process claim.'" Coningford v. Rhode Island, 640 F.3d at 483 (quoting Dougan v. Ponte, 727 F.2d 199, 201 (1st Cir. 1984), with ellipses omitted). Nevertheless, the concluding sentence in the discussion section refers not only to the right of a fair trial but also to specific provisions of the Constitution (the Sixth and Fourteenth Amendments). On balance, the citations to the fair trial guarantee coupled with the references to the Sixth and Fourteenth Amendments at the conclusion of the five page argument fairly and recognizably presented the claim in a manner that would alert a reasonable jurist.[7] See Baldwin v. Reese, 541 U.S. at 32 (dicta indicating that citing federal source of the law relied upon for the federal claim would satisfy exhaustion).

B. State Law Errors

It is well settled that section 2254(a) limits habeas relief to state convictions "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also 28 U.S.C. § 2241(c); Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011) ("'"federal habeas corpus relief does not lie for errors of state

[7] If the claim is not exhausted, the AEDPA allows a federal court to deny a petition where, as here, it "is patently without merit." Coningford v. Rhode Island, 640 F.3d at 483; 28 U.S.C. § 2254(b)(2). As explained below and applying de novo review, ground two is patently without merit and does not entitle petitioner to habeas relief.

law"'"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Brown v. O'Brien, 666 F.3d 818, 824 (1st Cir. 2012) ("[o]rdinarily, errors of state law are not the basis for federal habeas relief"). Errors of state law that do not rise to the level of a constitutional error "may not be corrected on federal habeas." Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993) (O'Connor, J. concurring); Sawyer v. Smith, 497 U.S. 227, 239 (1990) ("availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution"); Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) (errors "of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised").

Accordingly, whether the trial court met the standard under section 404 of the Massachusetts Guide to Evidence regarding the prior bad acts testimony or the parameters of the common law first complaint doctrine is *not* before this court. See, e.g., Coningford v. Rhode Island, 640 F.3d at 484 n.4 ("[o]ur review does not encompass the petitioner's" claim that "trial justice misapplied Rhode Island Rule of Evidence 404(b)"). That said, the petition recites four pages of "relevant facts" (Docket Entry # 1, pp. 7-10) but does not identify the legal ground for relief for either ground one or two (Docket Entry # 1, pp. 6 & 12). The petition does note that petitioner raised each ground on direct

appeal. (Docket Entry # 1, pp. 11-12). It also describes the grounds raised on appeal exclusively as a denial of the right to a fair trial under the Sixth and Fourteenth Amendment. (Docket Entry # 1, pp. 3-4). Mindful of petitioner's pro se status and out of an abundance of caution, this court construes the petition as raising not only state law claims, which are not subject to review, but also federal law claims of a denial of the right to a fair trial under the Sixth and Fourteenth Amendments.

C. Standard of Review

The applicable standard of review of the state court's decisions on grounds one and two depends upon whether the state court rendered a decision on the merits of the federal claim. 28 U.S.C. § 2254(d); see Lyons v. Brady, 666 F.3d 51, 53-54 (1st Cir. 2012) ("standard of review of the SJC's decision depends on whether that court 'adjudicated on the merits' [Lyons's due process] claim"); Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007). By its terms, section 2254(d) review only applies to adjudications by a state court "on the merits." 28 U.S.C. § 2254(d).

Section 2254(d) nevertheless "'does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits."'" Johnson v. Williams, 133 S.Ct. 1088, 1094 (2013). Consequently, "When a federal claim has been presented to a state court and the state court has denied

relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[8] Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011). For example, if the state law standard for a claim "subsumes the federal standard—that is, if it is at least as protective as the federal standard—then the federal claim may be regarded as having been adjudicated on the merits." Johnson v. Williams, 133 S.Ct. at 1096; see Kirwan v. Spencer, 631 F.3d 582, 587 (1st Cir. 2011) ("deference to the state court's determination is warranted" if state court adjudicated claim "under a state law standard that 'is at least as protective of the defendant's rights as its federal counterpart'"). On the other hand, if a petitioner fails to "'fairly present'" a claim for purposes of exhaustion to "'each appropriate state court,'" then "the Richter presumption is fully rebutted." Johnson v. Williams, 133 S.Ct. at 1097.

Here, the ALOFAR fairly presented the federal claims in grounds one and two to the SJC. The SJC summarily denied the application. Commonwealth v. Rodriguez, 465 Mass. 1103, 987

---

[8] The Harrington Court cited Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991), as an example of a case overcoming the presumption. Harrington v. Richter, 131 S.Ct. at 785. Ylst involved interpreting an unexplained order in the context of the procedural default rule. Ylst v. Nunnemaker, 501 U.S. at 803. Under Ylst, a federal habeas court may presume that the unexplained order rests on a procedural default if the lower state court decision rested on a procedural default. Id.

N.E.2d 595 (2013) (unpublished table decision). Finding no reason not to apply the Richter presumption, the SJC therefore decided the federal fair trial claims challenging the admission of the prior bad acts testimony and the first complaint testimony on the merits within the meaning of section 2254(d). See, e.g., Lyons v. Brady, 666 F.3d 51, 54 (1st Cir. 2012).

D. AEDPA Standard of Review

Section 2254(d)(1) establishes "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court."[9] Williams v. Taylor, 529 U.S. 362, 404 (2000). Under the first category, "a state court determination is 'contrary to' clearly established law if the court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009); accord Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of the Supreme Court or "reaches a different result from" a Supreme Court case "despite confronting

[9] The circumstances do not invoke a section 2254(d)(2) analysis and petitioner does not request such an analysis.

indistinguishable facts”).

Neither the SJC nor the appeals court applied a rule that contradicts Supreme Court precedent. In fact, the Supreme Court has not pronounced a rule specific to a state court’s admission of prior bad acts evidence, see Coningford v. Rhode Island, 640 F.3d at 484-485, or testimony analogous to a first complaint. As noted in Coningford, albeit in the context of section 2254(d)’s unreasonable application prong, the Supreme "Court has expressly declined to determine ‘whether a state law would violate the Due Process Clause if it permitted the use of “prior crimes” evidence to show propensity to commit a charged crime.’” Id. (citing Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991)). Hence, the Court also has not confronted materially indistinguishable facts and arrived at a result different from the SJC’s adjudication of the claim. The same finding applies to the first complaint testimony claim in ground two.

Under the second category, a federal court may grant the writ if the relevant state court decision “‘involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.’” Williams v. Taylor, 529 U.S. at 404-405 (quoting statute with ellipses omitted). An unreasonable application of clearly established federal law occurs if the state court “‘correctly identifies the governing legal principles, but (i) applies those principles to

the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.'" Gomes v. Brady, 564 F.3d at 537; see Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009). The standard "is 'difficult to meet.'" Metrish v. Lancaster, 133 S.Ct. 1781, 1786 (2013).

"Clearly established Federal law" under section 2254(d)(1) "includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." White v. Woodall, 134 S.Ct. 1697, 1702 (2014) (internal quotation marks omitted); Yeboah-Sefah v. Ficco, 556 F.3d 53, 65 (1st Cir. 2009) (term refers to "'holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision'") (internal brackets omitted). Moreover, an unreasonable application of Supreme Court "holdings must be objectively unreasonable, not merely wrong and even clear error will not suffice." White v. Woodall, 134 S.Ct. At 1702 (internal quotation marks omitted); see Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003); Wiggins v. Smith, 539 U.S. at 520-521 ("state court's decision must have been more than incorrect or erroneous"). Thus, in order to obtain federal habeas relief, the petitioner "must show that the state court's ruling on the claim

being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S.Ct. at 786-787.

Turning to relevant Supreme Court holdings regarding the due process claims in grounds one and two, an erroneous evidentiary ruling may result in a fundamentally unfair trial in violation of due process. Coningford v. Rhode Island, 640 F.3d at 484 (addressing admission of prior bad acts evidence claim under section 2254(d)(1)) (citing Montana v. Egelhoff, 518 U.S. 37, 43 (1996)). Supreme Court holdings establish that habeas relief is only afforded when "'the state court's application of state law'" is "'"so arbitrary or capricious as to constitute an independent due process violation."'" Lyons v. Brady, 666 F.3d at 55-56 (quoting Coningford, 640 F.3d at 484, quoting Lewis v. Jeffers, 497 U.S. at 780); see also Richmond v. Lewis, 506 U.S. 40, 50 (1992). As noted above, the Supreme Court has not announced a rule specific to the admission of prior bad acts evidence as a violation of due process. Coningford v. Rhode Island, 640 F.3d at 484-485.

Applied against this standard, the SJC's decision as to ground one was not objectively unreasonable. The trial judge carefully cautioned the jury to consider the evidence only for the limited purpose of showing "knowledge, intent, motive, or

method" if relevant to the crimes charged. (Docket Entry # 15, S.A. 534). He also instructed the jury not to consider the evidence of what took place in Puerto Rico "as proof that [petitioner] committed the crimes charged or that he has a criminal personality." (Docket Entry # 15, S.A. 534). The testimony by both victims regarding what took place in Puerto Rico was not extensive. The ruling therefore comports with Supreme Court holdings. See Dowling v. U.S., 493 U.S. 342, 352-53 (1990) (admission at defendant's bank robbery trial of his prior involvement in burglary along with limiting instruction that he had been acquitted and that evidence was admitted for limited purpose did not violate due process). Accordingly, it was not an unreasonable application of Supreme Court holdings.

In ground two and liberally construing the petition, it seeks to overturn the conviction on the basis that the trial judge erroneously admitted the first complaint testimony of the older sister's friend.[10] Applying the foregoing Supreme Court

---

[10] Under the state law doctrine at the time of petitioner's trial, a first complaint witness could "testify to the details of the alleged victim's first complaint of sexual assault and the circumstances surrounding that first complaint as part of the prosecution's case-in-chief." Com. v. King, 445 Mass. at 243. "Where a first complaint witness testifies at trial regarding the complaint," the complainant could also "testify about the details of the first complaint and the reasons why it was made at that particular time." Com. v. Aviles, 461 Mass. 60, 68 (Mass. 2011) (citing Com. v. King, 445 Mass. at 245); Com. v. King, 445 Mass. at 245 ("complainant may also testify to the details of the first complaint (i.e., what the complainant told the first complaint witness) and also why the complaint was made at that particular

jurisprudence, the purported error in the admission of the friend's testimony was neither arbitrary nor capricious let alone an unreasonable application of Supreme Court holdings establishing this guidepost. The credibility of the first victim was central. The admission of the limited and brief testimony of her friend as to what she was told allowed the jury to better judge the first victim's credibility. It was also relevant as a means to explain why the first victim did not initially report petitioner's conduct and to rebut his defense of fabrication noted in opening statement. The testimony was extremely brief[11] and the trial judge gave a limiting instruction thereby reducing any prejudice to petitioner. Thus, even on de novo review, the claim does not warrant habeas relief. It also fails to afford relief under section 2254(d)(1). See generally Obershaw v. Lanman, 453 F.3d 56, 66 (1st Cir. 2006) (unnecessary to decide if decision was on the merits and AEDPA standard applied "because we would reach the same conclusion under either standard of review").

---

time").

[11] The first victim's friend testified that, "she told me he would make her do stuff that she didn't want to do, but she had to do it." (Docket Entry # 15, S.A. 623). The friend also testified that, "She said she was afraid of telling somebody and I told her to tell someone, and she said no because she was afraid." (Docket Entry # 15, S.A. 624). Petitioner's counsel did not cross examine the friend on the substance of what the first victim told her.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[12] that the motion to dismiss (Docket Entry # 18) be **ALLOWED.**

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[12] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. See Rule 72(b), Fed. R. Civ. P. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.